UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALISANT SCOTT,

     Plaintiff,              Case No. 18-11658
                           HON. VICTORIA A. ROBERTS

v.

ELIZABETH GOODRICH, R.N.,
TERI MASSEY, N.P.,
In Their Individual Capacities, and
CORRECT CARE SOLUTIONS

     Defendants.
_____/

**ORDER GRANTING DEFENDANTS CORRECT CARE SOLUTIONS AND TERI MASSEY'S MOTION TO PRECLUDE PLAINTIFF FROM ELICITING EXPERT TESTIMONY FROM PLAINTIFF'S EXPERT MICHAEL BERGMAN, M.D. [ECF No. 49]**

## I.    INTRODUCTION

On October 8, 2016, Alisant Scott experienced a spontaneous rupture of a mass in her right breast - a problem she started complaining about on September 23, 2016. Because of the rupture, doctors performed a simple mastectomy.

This suit concerns the treatment and care Scott received before the rupture and mastectomy. Scott alleges Defendants Teri Massey, N.P. and Correct Care Solutions' actions are liable for deliberate indifference under 42 U.S.C. § 1983 and medical malpractice under Michigan law.

1

Defendants filed this motion to preclude Scott from eliciting standard of care and proximate cause testimony from Michael Bergman, M.D. The proximate cause testimony that Defendants seek to preclude appears to be that earlier intervention would have resulted in a better outcome for Scott.

Scott says she intends to call another expert to testify on the applicable standard of care. As such, that issue is **MOOT.**

As to Dr. Bergman's proposed proximate cause testimony, the Court **GRANTS** Defendants' Motion.

## II.     RELEVANT FACTUAL BACKGROUND

On September 23, 2016, while detained at the Oakland County jail, Scott requested immediate medical attention due to a swollen right breast. In her health service request form, she noted a previous history of similar issues with her left breast. On September 25th, Elizabeth Goodrich, R.N. – who at one time was a defendant but is no longer a party – examined Scott and noted: a 6x6 inch mass around Scott's nipple; her breast was warm to the touch; the skin around her nipple was red; Scott's pain was an 8 on a 10-point scale; and doctors removed a mass from Scott's left breast in 2010 or 2011.

Goodrich spoke with Defendant Teri Massey, N.P. Massey verbally ordered bactrim twice daily for ten days and motrin for seven days.

Goodrich scheduled a follow-up for Scott on September 28th with a doctor. Neither party addresses what happened at this follow-up, or whether it even took place.

On September 29th, Massey met with Scott. Massey noted Scott's continued complaints of pain, swelling, and redness to her right breast. Scott indicated her breast issues started on September 23rd, and that antibiotics did not alleviate her pain. Scott told Massey about her earlier left breast issues that resulted in cyst removal surgery. Massey ordered an ultrasound for Scott, prescribed mobic and ice packs, and discontinued the bactrim.

On September 30th, doctors performed an ultrasound on Scott's right breast. The ultrasound revealed four masses. Doctors recommended a mammogram and biopsy.

On October 1st, Scott submitted a second medical request. She again described severe pain and wrote that her condition was not "minor." On October 7th she submitted a third request. She stated her breast was infected and complained that she'd been in pain for over two weeks.

On Saturday, October 8th, Scott underwent a mammogram examination. Doctors admitted her into the hospital. Scott developed a fever and a physician scheduled a surgery to drain her right breast. Scott's breast mass ruptured the night before the scheduled surgery. Dr. Dana Busch

elected to perform a simple mastectomy following the rupture; most of Scott's breast tissue was necrotic.

## III.    LEGAL STANDARD

Federal Rules of Evidence 104(a) and 702 govern the admissibility of expert testimony. *Daubert v. Merrill Dow Pharm., Inc.,* 509 U.S. 579, 589 (1993). Rule 702:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) The expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) The testimony is based on sufficient facts or data;
> (c) The testimony is the product of reliable principles and methods; and
> (d) The expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

The district court must act as a gatekeeper and ensure expert testimony is both relevant and reliable. *Daubert,* 509 U.S. at 589; *Conwood Co., L.P. v. U.S. Tobacco Co.,* 290 F.3d 768, 792 (6th Cir. 2002). This general gatekeeping function applies to scientific knowledge, as well as "technical" and "other specialized" knowledge. *Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 141 (1999); *see also* Fed. R. Evid. 702.

To assess relevance and reliability, the district court must examine "whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue." *Conwood,* 290 F.3d at 792 (quoting *Jahn v. Equine Servs., PSC,* 223 F.3d 382, 388 (6th Cir. 2000)). This examination involves a preliminary inquiry into whether the reasoning or methodology can properly be applied to the facts in issue. *Id.* Some factors may be used in the inquiry, including testing, peer review, error rates, and general acceptance. *Id.* But, the inquiry is flexible, and "*Daubert's* list of specific factors neither necessarily nor exclusively applies to all experts or in every case." *Kumho,* 526 U.S. at 142. The district court has the same latitude in deciding how to test an expert's reliability as it has to decide whether that expert's testimony is reliable. *Id.* at 152.

## IV.   DISCUSSION

Defendants want to preclude Scott from eliciting proximate cause testimony from Michael Bergman, M.D. Although Dr. Bergman is qualified to offer such testimony, he does not provide a sufficient basis for his opinions. This makes his testimony unreliable and inadmissible under Fed. R. Evid. 702.

## A. Dr. Bergman is Qualified to Offer Proximate Cause Testimony

Defendants say Dr. Bergman is not qualified to offer testimony under Rule 702 because he does not have the requisite educational experience as a nurse practitioner to offer opinions against Defendant Massey. This is an argument against standard of care testimony; Defendants do not address Dr. Bergman's qualifications to give proximate cause testimony.

Dr. Bergman is qualified under Rule 702 to give such testimony. To qualify as an expert under Rule 702, a witness's expertise must be based on "knowledge, skill, experience, training, or education." Fed. R. Evid. 702. Dr. Bergman is a board-certified internal medicine and infectious disease physician with thirty years of experience. Dr. Bergman testified at his deposition that in the past year, he treated "maybe five" women with breast infections. He has also testified as an expert in three breast infection cases.

Defendants do not challenge Scott's assertion that she suffered from an infection, nor do they challenge Dr. Bergman's board certification in infectious diseases. Under Rule 702, "the only thing a court should be concerned with in determining the qualifications of an expert is whether the expert's knowledge of the subject matter is such that his opinion will likely assist the trier of fact in arriving at the truth." *Mannino v. International Mfg. Co.,* 650 F.2d 846, 851 (6th Cir. 1981).

This suit concerns Defendants' actions in response to Scott's breast infection – Dr. Bergman is qualified under Rule 702 as an infectious disease physician to offer proximate cause testimony regarding Scott's infection.

## B. The Challenged Opinion(s)

The parties do not clearly state what Dr. Bergman's proximate cause opinion is. It appears to be a general claim that earlier intervention would have resulted in a better outcome for Scott. This claim aligns with Dr. Bergman's Affidavit of Merit, which says:

> If Alisant Scott would have underwent a biopsy and the abscess diagnosed in a timely fashion, I believe with a reasonable degree of medical certainty she would have experienced less pain and discomfort and the infection in her breast would have been successfully treated so that she would not have required a mastectomy.

ECF No. 4, PageID.35.

Scott says the core of Dr. Bergman's testimony is:

> Ms. Scott had an abscess in her breast. The treatment for such a breast abscess is drainage and antibiotics. Because the defendants failed to timely recognize the issue, and failed to timely provide drainage and antibiotics, Ms. Scott had her right breast removed.

ECF No. 61, PageID.1473.

Neither party mentions Dr. Bergman's expert report, where he wrote in part:

It is my opinion, within a reasonable degree of medical certainty, that had the proper standard of care been exercised in the evaluation of Alisant Scott's large, tender breast mass, the degree of her permanently disfiguring breast surgery and much of her pain and suffering would have been largely eliminated.

ECF No. 49-9, PageID.553-54.

Again, it is unclear what Dr. Bergman's specific opinion is regarding proximate cause – the opinions noted above seem to be inextricably intertwined with a standard of care opinion.

### a. Defendants Successfully Challenge Dr. Bergman's Testimony

Defendants say the Court should preclude Dr. Bergman's "opinions" because they fail to fulfill the requirements of Rule 702. Specifically, Defendants say Dr. Bergman does not have a sufficient underlying basis for his opinion because: (1) he relies on ambiguous analogies and vaguely on animal studies and cannot definitively say when Scott's breast would have been salvageable; (2) he does not sufficiently explain how his experience leads to his conclusion, why that experience is sufficient, and how that experience is reliably applied to the facts as required by Rule 702; and (3) Dr. Dana Busch, the treating doctor who performed Scott's mastectomy, said he could not state within a degree of medical certainty one way or the other

that Scott's results would have been different if she had been rushed into surgery. ECF No. 49-5, PageID.482.

### (1) Animal Studies and Analogies

Scott says Dr. Bergman's reliance on analogies and animal studies are sufficient because the types of experiments that could precisely determine when Scott's breast would have been salvageable would be "unethical and human rights violations," and presumably unavailable. However, Dr. Bergman does not point to any specific animal study that does support his conclusion.

Further, Scott fails to show how Dr. Bergman's analogies, such as "[t]his is analogous to a snowball being brought up the mountain top and now being released. I mean, the higher up it goes, the worse it's going to be a disaster [sic] when it's released," ECF No. 49-8, PageID.505, assists the trier of fact in determining proximate cause.

Dr. Bergman's reliance on analogies and general animal studies is not sufficient under Rule 702.

### (2) Dr. Bergman's Experience

Scott directs the Court to Dr. Bergman's decades of experience as an infectious disease expert, an article on breast abscess management that he

provided during his deposition, and on Scott's prior comparable condition in her left breast as sufficient bases for his opinion. This is not persuasive.

An expert can rely solely or primarily on experience. *See* Fed. R. Evid. 702 advisory committee's notes (2000). But to do so, the expert "must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." *Id.* In its gatekeeping function, the Court must do more than "take the expert's word for it." *Id.* (quoting *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 43 F.3d 1311, 1319 (9th Cir. 1995).

Scott fails to show how Dr. Bergman relates his specific experience to the facts of this case, or how it is a sufficient basis for his opinion. Even though his conclusion that Scott would have had a better outcome if she underwent earlier treatment is - to an extent - common sense, an expert's testimony is not helpful "where the jury has no need for an opinion because the jury can easily reach reliable conclusions based on common sense." 29 Fed. Prac. & Proc. Evid. § 6265.2 (2nd ed.).

### (3) Dr. Dana Busch's Testimony

Scott cites to Dr. Dana Busch's deposition testimony to support Dr. Bergman's opinion. Dr. Busch testified:

> [E]arlier intervention, whether it's breast cancer or
> infections or any type of thing, earlier intervention
> generally tends to favor a less complicated approach,
> in general.

ECF No. 61-5, PageID.1502. Dr. Busch further testified:

> But in general, you know, it is possible that it – that
> what I found might have been less extensive at an
> earlier time, yes, that's possible. But again, that's –
> that requires a degree of speculation that – that none
> of us could really provide. But it's possible.

ECF No. 61-5, PageID.1502.

Scott does not develop why Dr. Busch's testimony is a sufficient basis
for Dr. Bergman's testimony. Further, as Defendants argue, Dr. Busch stated
that the possibility of Scott requiring a less extensive procedure is
speculative. An expert opinion cannot be based on speculation. *In re: E.I. Du
Pont De Nemours and Company C-8 Personal Injury Litigation,* 337
F.Supp.3d 728, 747 (S.D. Ohio, July 20, 2015) (citing *Smelser v. Norfolk S.
Ry.,* 105 F.3d 299, 304 (6th Cir. 1997)).

### (4) Additional Evidence Offered by Scott

Scott points to an article Dr. Bergman provided during his deposition.
The article mostly discusses the standard of care for breast abscesses –
testimony that Scott concedes Dr. Bergman will not give. Defendants say

nothing in the article supports Dr. Bergman's opinion – that if Scott's procedure had been done sooner, the outcome would have been different.

This is not entirely accurate. The article does say "[c]osmetic outcome is more likely to be poor in the setting of delayed treatment." ECF No. 61-1, PageID.1485. But Dr. Bergman did not discuss this in his deposition. Counsel asked Dr. Bergman what he found important about this article. He referenced standard of care: "[t]he emphasis on early drainage, as well as broad-spectrum antibiotics, and not confusing it with other conditions, such as breast cancer." ECF No. 49-8, PageID.502. Dr. Bergman does not sufficiently relate this article to a proximate cause opinion.

Scott says Dr. Bergman also relied on her previous comparable condition in her left breast. He testified in his deposition: "[I]t's also based on the fact that she had a very similar, comparable illness in the contralateral breast, and she did not require a mastectomy. Generally speaking, time equals tissue, and drainage reduces that pressure that causes the skin necrosis." *Id.* at PageID.504.

He further testified, "[Scott] had a prior mass in the left breast, which, if you go back in the record, in the patient's deposition, she did almost the exact same process before: [s]he was thought to have a mass, not infected, and it was infected. So she's done this before, and as odd as it is for this to

12

happen once and for it to pass unappreciated, it's about to happen a second time." ECF No. 49-8, PageID.509.

Defendants do not dispute that Scott had a prior comparable condition in her left breast, nor do they address it in their reply brief. But, Dr. Bergman's claim that delayed treatment caused the rupture in Scott's right breast, perhaps because of the progression of her left breast condition, seems to be based on speculation, or experience. But, an expert opinion cannot be based on speculation, and Dr. Bergman fails to sufficiently support an opinion solely based on his experience. Further, his deposition testimony regarding Scott's left breast condition also is inextricably intertwined with standard of care.

## V.    CONCLUSION

The Court has "considerable leeway" in deciding whether particular expert testimony is reliable. *Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 152 (1999). But, the Court's focus must remain "on principles and methodology, not on the conclusions that they generate." *Daubert,* 509 U.S. at 595. Although Dr. Bergman's general claim that earlier intervention would have resulted in a better outcome for Scott is a reasonable conclusion, he does not provide principles and methodology which support his opinion.

Defendants' Motion to preclude Dr. Bergman from testifying to the applicable standard of care is **MOOT**.

The Court **GRANTS** Defendants' Motion to Preclude Dr. Bergman's proximate cause testimony.

**IT IS ORDERED.**

Dated: October 25, 2019            s/ Victoria A. Roberts
                                                   Victoria A. Roberts
                                                   United States District Court