UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALISANT SCOTT,

      Plaintiff,                           Case No. 18-11658
                                                HON. VICTORIA A. ROBERTS

v.

TERI MASSEY, N.P.,
In Her Individual Capacity, and
CORRECT CARE SOLUTIONS

      Defendants.
_____/

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [ECF No. 55]

### I.     INTRODUCTION

This is a prisoner civil rights suit concerning the treatment and care Alisant Scott ("Scott") received from Nurse Practitioner Teri Massey, ("Massey"), an employee of Defendant Correct Care Solutions, while Scott was incarcerated at the Oakland County jail.

On September 23, 2016, Scott complained of pain, swelling, and a mass in her right breast. Treatment began. On October 8, 2016, the mass ruptured. Because of the rupture, doctors performed a simple mastectomy.

Scott alleges Massey's actions leading up to the mastectomy were deliberately indifferent in violation of 42 U.S.C. § 1983 and that Massey

1

committed medical malpractice in violation of Michigan law. Scott alleges

Correct Care Solutions is liable for Massey's alleged malpractice under the

theory of *respondeat superior.*

## II.    LEGAL STANDARD

Summary judgment is proper when "the movant shows that there is no

genuine dispute as to any material fact and the movant is entitled to judgment

as a matter of law." Fed. R. Civ. P. 56(a). The central inquiry is "whether the

evidence presents a sufficient disagreement to require submission to a jury

or whether it is so one-sided that one party must prevail as a matter of law."

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251-52 (1986).

The moving party has the initial burden to show "the absence of a

genuine issue of material fact." *Id.* at 323. Once the movant meets this

burden, the non-moving party must demonstrate specific facts "showing

there is a genuine issue for trial." *Matsushita Electric Indus. Co. v. Zenith

Radio Corp.,* 475 U.S. 574, 587 (1986) (internal quotations and citations

omitted). To demonstrate a genuine issue for trial, the non-moving party must

present sufficient evidence upon which a jury could reasonably find for that

party; a "scintilla of evidence" is insufficient. *See Anderson,* 477 U.S. at 252.

The Court must accept the non-movant's evidence as true and draw all

"justifiable inferences" in the non-movant's favor. *See Anderson,* 477 U.S. at 255.

## III.  FACTUAL BACKGROUND

On September 23, 2016, Scott completed a health service request form at the Oakland County jail for immediate medical attention due to a swollen right breast. In this form, Scott noted her current concerns and a history of similar issues with her left breast. On September 25th, Elizabeth Goodrich, R.N. – who is no longer a party to this action – examined Scott and noted: a 6x6 inch mass around Scott's nipple; the breast was warm to the touch; the skin around the nipple was red; her pain was an 8 on a 10-point scale; and doctors removed a mass from Scott's left breast in 2010 or 2011.

Goodrich relayed this information to Massey over the phone. Massey ordered Bactrim, a medication to treat MRSA (methicillin-resistant staphylococcus aureus) infections, twice daily for ten days and motrin for seven days. At all relevant times, Massey was an employee of Defendant Correct Care Solutions, LLC.

Goodrich scheduled a follow-up for Scott on September 28th with a doctor. Neither party addresses what happened at this follow-up, or whether it even took place.

3

On September 29th, Massey met with Scott in person. Massey noted: (1) Scott's continued complaints of pain, swelling, and redness to the right breast; (2) antibiotics did not alleviate Scott's pain; and (3) Scott's earlier left breast issues resulted in cyst removal surgery. Massey ordered an ultrasound, prescribed mobic and ice packs, and discontinued the bactrim.

On September 30th, doctors performed an ultrasound on Scott's right breast. The ultrasound revealed four masses. Doctors recommended a mammogram and biopsy.

On October 1st, Scott submitted a second medical request form. She again described severe pain, wrote that her condition was not "minor," and that it was not fair that she had to sit day after day in pain. On October 7th, Scott submitted a third request. She stated her breast was infected and complained that she had been in pain for over two weeks.

On October 8th, doctors attempted to perform a mammogram examination, but Scott could not tolerate the pain. Doctors admitted her to the hospital. Scott developed a fever, and a physician scheduled surgery to drain Scott's right breast mass. However, the mass spontaneously ruptured the night before the scheduled surgery. Dr. Dana Busch elected to perform a simple mastectomy following the rupture because most of Scott's breast tissue was necrotic.

## IV. ANALYSIS

### A. Deliberate Indifference Under 42 U.S.C. § 1983 Against Defendant Massey

Scott asserts a § 1983 claim against Massey. Specifically, Scott alleges Massey was deliberately indifferent to her serious medical needs, and that this was cruel and unusual in violation of the Eighth Amendment.

The Eighth Amendment "forbids prison officials from 'unnecessarily and wantonly inflicting pain' on an inmate by acting with 'deliberate indifference' towards [their] serious medical needs." *Blackmore v. Kalamazoo Cty.,* 390 F.3d 890, 895 (6th Cir. 2004) (quoting *Estelle v. Gamble,* 429 U.S. 97, 104 (1976)). To prevail on an Eighth Amendment deliberate indifference claim, Scott must satisfy both an objective and subjective component. *Farmer v. Brennen,* 511 U.S. 825, 834 (1994).

### 1. Objective Component

To satisfy the objective component, a plaintiff must prove that her medical need was "sufficiently serious." *Blackmore v. Kalamazoo County,* 390 F.3d 890, 895 (6th Cir. 2004) (quoting *Farmer,* 511 U.S. at 834).

To establish a sufficiently serious medical need and satisfy the objective component, a plaintiff can assert a theory of: (1) inadequate treatment; or (2) the failure to treat an obviously serious medical condition.

5

The Sixth Circuit distinguished between "cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Alspaugh v. McConnell,* 643 F.3d 162, 169 (6th Cir. 2011).

Scott asserts both theories. She relies on inadequate treatment cases to say a reasonable jury could find that her care was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness," *Rhinehart v. Scutt,* 894 F.3d 721, 737 (6th Cir. 2018). But she also relies on failure to treat cases to argue that because her breast pain, heat, and swelling were not alleviated by Massey's actions, the evidence supports the conclusion that she "actually experienced the need for medical treatment, and that the need was not addressed within a reasonable time frame." *Blackmore v. Kalamazoo County,* 390 F.3d 890, 900 (6th Cir. 2004).

Scott cannot proceed under both theories. The Sixth Circuit distinguishes them, and a plaintiff must meet different evidentiary thresholds under each.

### a. Inadequate Treatment of a Serious Medical Condition

When a plaintiff alleges inadequate on-going treatment, she must show care "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Rhinehart,* 894 F.3d at 737. The plaintiff must present enough evidence for a factfinder "to evaluate the adequacy of the treatment," and "the severity of the harm caused by the allegedly inadequate treatment." *Id.* This often requires expert medical testimony showing the medical necessity of the plaintiff's desired treatment and the inadequacy of the received treatments. *Id.* "The plaintiff must also 'place verifying medical evidence in the record to establish the detrimental effect' of the inadequate treatment." *Id.* (quoting *Blackmore,* 390 F.3d at 898 (quoting *Napier v. Madison Cty., Ky.,* 238 F.3d 739, 742 (6th Cir. 2001))).

### b. The Failure to Treat an Obviously Serious Medical Condition

When a plaintiff alleges prison officials failed to provide medical treatment, she can satisfy the objective component by showing she had a medical need diagnosed by a physician as mandating treatment, or a medical need so obvious that even a layperson would easily recognize the necessity for a doctor's attention, and, that the prison failed to treat, or,

7

provided treatment so cursory as to amount to no treatment at all. *See Blackmore,* 390 F.3d at 899-900; *Rhinehart v. Scutt,* 894 F.3d 721, 737 (6th Cir. 2018) (internal citations omitted); ("[A] prisoner is not required to show that [s]he was literally ignored by the staff to prove an Eighth Amendment violation, only that [her] serious medical needs were consciously disregarded.") *Rouster v. County of Saginaw,* 749 F.3d 437, 448 (6th Cir. 2014); ("[I]n some cases the medical attention rendered may be so woefully inadequate as to amount to no treatment at all") *Westlake v. Lucas,* 537 F.2d 857, 860 n.5 (6th Cir. 1976).

In these cases, "[a] plaintiff does not need to present verifying medical evidence to show that, even after receiving the delayed necessary treatment, [her] medical condition worsened or deteriorated." *Blackmore,* 390 F.3d at 900. "Instead, it is sufficient to show that [she] actually experienced the need for medical treatment, and that the need was not addressed within a reasonable time frame." *Id.*

### c. Although Scott Says Her Condition Was "Obvious," Her Complaint and Brief are Replete With Allegations That Suggest Scott Received Care That Went Beyond Cursory Treatment

Scott says her need for treatment was obvious ("Plaintiff presented . . . with a severely infected breast and it was obvious . . . that immediate

8

treatment by way of imaging tests, evaluation by a physician and surgical treatment of the abscess in her breast was the only treatment which was indicated." ECF No. 4, PageID.16); ("The instant case does not involve a minor or non-obvious medical condition." ECF No. 64, PageID.1605). These sound like allegations of cursory treatment. ("The Defendants' dispensing of Bactrim, an antibiotic[,] and Motrin[,] an analgesic[,] by analogy is similar to giving a person suffering a cardiac arrest or infarction an aspirin") ECF No. 4, PageID.16.

Scott also alleges inadequate treatment: the failure to immediately order an ultrasound or other imaging study, ECF No. 4, PageID.17; the failure to follow up and review the eventual ultrasound results in a timely fashion, *Id.*; and the failure to provide pain relief and medication during "the entire period from when Defendants' first became aware of the serious nature of the infection," *Id.* Scott also concedes that Massey ordered an ultrasound and scheduled a mammogram, and that this was appropriate. ECF No. 4, PageID.1607. These allegations and Scott's concession place her case squarely within the "inadequate treatment" line of cases rather than with those alleging cursory treatment that amounts to no treatment at all.

As such, the Court agrees with Defendants that Scott must place verifying medical evidence in the record to establish the detrimental effect of

the inadequate treatment. They say Scott focuses on the timing in which she received treatment. *Napier,* 238 F.3d at 742. ("We adopt the holding [of the Eleventh Circuit] that '[a]n inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed.") (internal citations omitted).

Scott acknowledges that she received medical treatment before her mastectomy. And, she says a reasonable jury could find that the care she did receive was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." This is exactly what the case law says Scott has an obligation to prove if she is proceeding under an inadequate treatment theory. But Scott disputes that she must satisfy the next prong of an inadequate treatment case: to present verifying medical evidence.

Scott says she does not have to present verifying medical evidence because her need for medical care was "obvious," and – in such cases – the constitutional violation "is not premised upon the 'detrimental effect' of the delay, but rather that the delay alone in providing medical care creates a substantial risk of serious harm." *Blackmore,* 390 F.3d at 899. But, the

10

undisputed facts of this case make clear that Scott must satisfy the verifying medical evidence requirement.

*Blackmore*, 390 F.3d 890 (6th Cir. 2004), *Horn v. City of Covington,* 2018 WL 3865377 (E.D. KY. Aug.14, 2018) and *Roach v. Doolin,* 2009 WL 5184349 (W.D. KY, Dec. 22, 2009) are instructive.

Blackmore did not suffer from a "long-term and well monitored illness, but rather exhibited obvious manifestations of pain and injury." *Id.* at 899. He complained orally and in writing of severe pain for two days and vomited before receiving medical treatment. *Id.* Officials gave Blackmore antacids, but did not otherwise provide treatment. *Id.* at 894. After these two days, a nurse identified "classic signs of appendicitis" and doctors performed a successful appendectomy. *Id.* at 900. The Court held this was an illness that would be "obvious" to a lay person, that Blackmore made a sufficient showing that he "actually experienced the need for medical treatment, and that the need was not addressed within a reasonable time frame." Under these circumstances, the Sixth Circuit held that a prisoner did not need to provide verifying medical evidence.

In *Horn v. City of Covington*, the court found the plaintiff satisfied the "obviousness" standard because he presented sufficient evidence that he

exhibited obvious manifestations of pain – he complained of abdominal pain, was unable to void, had genital pain, and brown urine. 2018 WL 3865377 at *26. Three other inmates submitted affidavits that they observed the plaintiff's condition and believed his requests for medical attentions were valid. *Id.* at *4. However, Horn did not receive any medical treatment. *Id.* at *28.

In *Roach v. Doolin,* Roach experienced dizzy spells, chest pain, lost consciousness twice and fell to the floor. 2009 WL 5184349 at *3. He reported a previous heart attack and that he had not received several prescribed medications since arriving to jail. *Id*. One prison official called for emergency help. *Id.* Two emergency medical technicians arrived and said the plaintiff needed an ambulance. *Id.* However, another prison official refused to call for one. *Id.* After thirty minutes to an hour, the prison official who refused to call for an ambulance said he would have another jailer take Roach to the hospital. *Id.* Roach received no medical treatment at all. *Id.* The court found Roach's symptoms were obviously serious, and he was not required to provide verifying medical evidence that the delay in treatment caused a detrimental effect. *Id.* at *5.

No doubt Scott exhibited obvious manifestations of pain and injury, like Blackmore, Horn, and Roach. But Blackmore received cursory treatment,

and Horn and Roach received no treatment at all. Scott is distinguished from these plaintiffs because she admits she was seen by two nurses, was prescribed antibiotics and a pain reliever, and underwent an ultrasound and mammogram before she was admitted to the hospital.

Scott's allegations align more with *Santiago v. Ringle,* 734 F.3d 585, 591 (6th Cir. 2013). It addresses the coalescing of the two routes to satisfy the objective component of an Eighth Amendment deliberate indifference to a serious medical need claim. It discusses the tension caused when there has been an attempt to treat a condition – albeit inadequate – that may cry out for more treatment because of ongoing complaints of pain.

Santiago complained that prison officials delayed in providing a specific type of medical treatment for his skin condition; he did not allege that he received no treatment at all or only cursory treatment. *Id.* at 590. Santiago complained of severe pain, presented with painful, red raised nodules on his skin extending from his ankles to his knees, and was diagnosed with a skin condition. *Id.* Also, doctors had prescribed Santiago various medications as well as a wheelchair and cane. *Id.*

The Sixth Circuit agreed with Santiago that "pain can be a sufficiently serious medical need." *Id.* at 590. Like Santiago, Scott received some treatment but continued to experience obvious pain. However, because

13

Santiago disputed the adequacy of his treatment, the Court held medical proof was necessary to assess whether the delay caused a serious medical injury. *Id.* at 591.

Accordingly, the Court follows the *Santiago* line of cases and construes Scott's allegations as an "inadequate treatment" claim. Under this theory and construction, Scott must provide verifying medical evidence that her medical need was not addressed in a reasonable time frame, and medical evidence of the detrimental effect of the delay. Because Scott fails to provide verifying medical evidence that a delay in treatment caused her to require a mastectomy, she cannot satisfy the objective component of her case.

Scott's failure to satisfy the objective component is fatal to her claim and the Court need not analyze the subjective component.

### B. Scott's Medical Malpractice Fails Because She Cannot Establish Proximate Cause

In order to prevail on a medical malpractice claim, Scott "bears the burden to prove: (1) the applicable standard of care, (2) breach of that standard by defendant, (3) injury, and (4) proximate causation between the alleged breach and the injury." *Wischmeyer v. Schanz,* 449 Mich. 469, 484 (1995).

Defendants say: (1) Massey's treatment fell within the standard of care, and (2) Scott fails to provide any evidence that Massey's action, or inaction, proximately caused Scott's simple mastectomy.

Dr. Migaud says Massey breached the standard of care required by nurse practitioners when she failed to: (1) reevaluate her differential diagnosis; (2) see Scott in person on September 30th to respond to abnormal ultrasound findings; and (3) respond to Scott's ongoing complaints of pain on October 1st when Massey learned the pain had not subsided and that there was no change in her condition following antibiotic therapy.

Scott relies on Michael Bergman's, M.D. opinion that "had the appropriate treatment been provided sooner, the outcome would have been better," ECF No. 64, PageID.1612, to establish a proximate cause link between Massey's alleged malpractice and Scott's mastectomy. Because Massey was an employee of Correct Care Solutions, Scott asserts Correct Care Solutions is liable under a theory of *respondeat superior.*

A plaintiff in a medical malpractice case must establish the proximate cause prong of her prima facie case by a preponderance of the evidence. *Craig ex rel. Craig v. Oakwood Hosp.,* 471 Mich. 67, 86 (2004) (quoting MCL 600.2912a). "Proximate cause" incorporates both cause in fact and legal

15

cause. *Id.* "As a matter of logic, a court must find that the defendant's negligence was a cause in fact of the plaintiff's injuries before it can hold that the defendant's negligence was the proximate or legal cause of those injuries." *Id.* at 87.

Scott does not need to show that Massey's act or omission was the sole cause of her injuries; she need only provide evidence permitting the jury to conclude that Massey's act or omission was a cause. *Id.* Scott cannot satisfy this burden with evidence that it is a "mere possibility" that Massey's act or omission caused the injury, or with a plausible explanation. *Id.* Scott establishes that Massey's conduct was a cause in fact of her injuries "only if she 'set[s] forth specific facts that would support a reasonable inference of a logical sequence of cause and effect.'" *Id.* (quoting *Skinner v. Square D Co.,* 445 Mich. 153, 174 (1994)).

Defendants filed a motion to preclude Scott's proposed proximate cause expert. The Court granted the motion and precluded Dr. Bergman's testimony on the grounds that his opinion – that delayed treatment caused Scott's simple mastectomy – was not sufficiently supported. This was Scott's only proximate cause medical evidence.

Without expert testimony, Scott cannot offer more than a correlation between Massey's delay in treatment and her mastectomy. "It is axiomatic in logic and science that correlation is not causation." *Craig,* 471 Mich. At 93. "Where the connection between the defendant's negligent conduct and the plaintiff's injuries is entirely speculative, the plaintiff cannot establish a prima facie case of negligence." *Id.*

Because Scott cannot establish proximate cause, her claim fails, and the Court need not address whether Massey breached the standard of care or whether Correct Care Solutions is liable under *respondeat superior.*

## V.    CONCLUSION

The Court **GRANTS** Defendants' Motion for Summary Judgment on Scott's deliberate indifference and medical malpractice claims.

**IT IS ORDERED.**

Dated: December 17, 2019               s/ Victoria A. Roberts
                                       Victoria A. Roberts
                                       United States District Judge